# TAYLOR & COHEN LLP

40 Worth Street, 10th Floor
New York, NY 10013
Tel (212) 257-1900
Fax (646) 808-0966
www.taylorcohenllp.com

ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 3 0 2020

March 27, 2020

*By ECF and Fax*

The Honorable George B. Daniels
United States District Court Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

SO ORDERED:

*/s/ George B. Daniels*

George B. Daniels, U.S.D.J.

Dated: MAR 3 0 2020

**Re: *United States v. Eddie Mayo*, 19 CR 176-02 (GBD)**

Dear Judge Daniels:

    Eddie Mayo respectfully moves the Court for an order granting his release on bail with the following conditions: (a) Mr. Mayo is subject to home incarceration with electronic monitoring; (b) Mr. Mayo's proposed residence is first inspected for any firearms or narcotics, and the residence is approved by Pretrial Services and/or Probation prior to his release; and (c) Mr. Mayo fully complies with all standard conditions of release, including prohibitions on future crimes, drug use, and possession of a firearm, as well as electronic monitoring. The government has consented to this motion subject to the conditions listed above because Mr. Mayo presents an increased risk of severe illness or death from COVID-19.

    On December 10, 2019, Mr. Mayo entered a plea of guilty to conspiring to distribute and possess with intent to distribute 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B) and conspiring to traffic in firearms, in violation of Title 18, United States Code, Sections 371 and 922(a)(1)(A). Mr. Mayo was remanded without objection following his plea allocution under 18 U.S.C. § 3143(a)(2).

    Mr. Mayo now appeals from this detention order under 18 U.S.C. § 3145(c). That provision provides, in relevant part:

> A person subject to detention pursuant to section 3143(a)(2) ...,
> and who meets the conditions of release set forth in section
> 3143(a)(1) ..., may be ordered released, under appropriate
> conditions, by the judicial officer, if it is clearly shown that there
> are exceptional reasons why such person's detention would not
> be appropriate.

Hon. George B. Daniels
March 27, 2020
Page 2

18 U.S.C. § 3145(c). The U.S. Court of Appeals for the Second Circuit has described "exceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). Determining whether a given circumstance presents exceptional reasons under section 3145 requires a case-by-case evaluation by the district judge, and the district judge's discretion is "constrained only by the language of the statute: 'exceptional reasons.'" *Id.*

Here, the COVID-19 pandemic combined with Mr. Mayo's pre-existing condition that heighten his risk of complications from the virus constitute "exceptional reasons" that warrant his release pending sentencing. COVID-19 presents an unprecedented public health crisis. The virus has infiltrated the MDC-Brooklyn, where Mr. Mayo is detained. *See BOP: COVID-19 Update*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus (last updated 3/26/2020) (confirming that one MDC-Brooklyn inmate has tested positive).

Mr. Mayo is a 44-year-old male who had one of his lungs removed in 1997 and, additionally, has been diagnosed with cardiomegaly, or an enlarged heart, which may be a symptom of a medical condition such as the weakening of the heart muscle, coronary artery disease, heart valve problems or abnormal heart rhythms. Mr. Mayo's medical condition elevates his risk of severe complications from the virus. Medical research indicates that patients who, like Mr. Mayo, have undergone the removal of a lung have decreased pulmonary function over the long term. For example, a 2007 study measuring the effect of the removal of part or all of a lung on cancer patients' pulmonary function concluded that after 6 months both exercise capacity and lung function "were significantly worse than their preoperative values."[1] Specifically, patients who had an entire lung removed lost 35% of forced expiratory value ($FEV_1$), which is a measure of pulmonary function.[2] In sum, Mr. Mayo has reduced lung function as a result of the removal of one of his lungs.

---

[1] Thida Win, Ashley M. Groves, Andrew J. Ritchie, Francis C. Wells, Fay Cafferty, and Clare M. Laroche, "The Effect of Lung Resection on Pulmonary Function and Exercise Capacity in Lung Cancer Patients," RESPIRATORY CARE (June 2007), at 725, *available at* http://www.rcjournal.com/contents /06.07/06.07.0720.pdf (last visited March 26, 2020).

[2] *See id. See also* Barbara Cristina Brocki, Elisabeth Westerdahl, Daniel Langer, Domingos S.R. Souza, Jan Jesper Andreasen, "Decrease in pulmonary function and oxygenation after lung resection," ERJ OPEN RESEARCH (2018), *available at* https://openres.ersjournals.com/content/4/1/00055-2017 (last visited March 26, 2020) (finding that the removal of a lung results in a decrease in pulmonary function and oxygenation).

Hon. George B. Daniels
March 27, 2020
Page 3

It is well documented that COVID-19 can cause the mucous membranes of the lungs to become inflamed, which in turn reduces the supply of oxygen to the blood.[3] Older people and people with underlying health issues like Mr. Mayo's are not more likely to contract a severe illness than younger, healthier people, but it is more likely that a severe illness from the virus will kill them.

Accordingly, defendant's risk of serious infection while in custody as a result of his medical condition "present[s] a unique combination of circumstances giving rise to [a] situation[] that [is] out of the ordinary." *DiSomma*, 951 F.2d at 497; *see also United States v. Perez* , No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting defendant's bail application in light of "the unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155, at *1-*2 (S.D.N.Y. Mar. 19, 2020) (reversing previous denial of bail "in light of circumstances that have changed since the March 6 hearing," namely, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic").

In addition to the existence of "exceptional reasons" for release on bail, Mr. Mayo also "meets the conditions of release set forth in section 3143(a)(1)." 18 U.S.C. § 3145(c). Section 3143(a)(1), which provides for release or detention pending sentencing, requires that the Court find "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id.* § 3145(a)(1). Mr. Mayo is neither likely to flee nor does he pose a danger to the safety of others in his community under the conditions of release agreed with the government, which include home incarceration with electronic monitoring. During his detention at the MDC, Mr. Mayo has been a model prisoner. As indicated in his PSR, Mr. Mayo is a tutor for the GED program and has worked as a barber while in the MDC. (*See* ECF No. 36 at ¶ 91). Mr. Mayo's supervisor at the MDC stated that Mr. Mayo is

> a hardworking, motivational and respectful individual. He volunteers and provides haircuts to the inmates on the unit. He also mentors the young new commits on the unit to keep out of trouble. He also does any work assignment that is asked of him by staff.

*Id.* Furthermore, upon release, Mr. Mayo will subject to home incarceration in his lifelong home in Brooklyn, where he will live with his partner of more than 15 years and their

---

[3] *See, e.g.*, Pam Belluck, "What Does the Coronavirus Do to the Body?," THE NEW YORK TIMES (March 26, 2020), *available at* https://www.nytimes.com/article/coronavirus-body-symptoms.html.

Hon. George B. Daniels
March 27, 2020
Page 4

three young children, with whom he has a very close relationship. Following an inspection of his home by pretrial services or probation and the installation of an electronic monitoring device, he will not present any danger to the community.

Accordingly, Mr. Mayo respectfully moves, on consent with the government, for an order granting his release on bail under 18 U.S.C. § 3145(c) subject to the following conditions: (a) home incarceration with electronic monitoring; (b) an inspection of Mr. Mayo's residence for any firearms or narcotics, and the approval of the residence by Pretrial Services and/or Probation prior to his release; and (c) full compliance with all standard conditions of release, including prohibitions on future crimes, drug use, and possession of a firearm.

Thank you for your consideration of this matter.

Respectfully submitted,

/s/ _____
Zachary S. Taylor

cc:   Mollie Bracewell, Esq.
      Jarrod Schaeffer, Esq.
            Assistant United States Attorneys (*via ECF*)